## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,            Case No. 14-20082

      v.                      HON. TERRENCE G. BERG
                                   HON. STEPHANIE D. DAVIS

D-1   ROSCOE BENTON, III, and
D-2   DESI NAJUANA BENTON,

               Defendants.

_____/

## OPINION AND ORDER GRANTING GOVERNMENT'S MOTION TO SUPPLEMENT THE PRESENTENCE REPORT (DKT. 49) AND DENYING DEFENDANT ROSCOE BENTON, III'S MOTION FOR A NEW TRIAL (DKT. 50)

       After a two-week jury trial in November 2014, Defendants Roscoe Benton, III

("Defendant")[1] and Desi Najuana Benton ("Defendant Desi Benton") were found

guilty on multiple counts of bankruptcy fraud and one count of mail fraud. (*See* Dkt.

37.) Sentencing is scheduled for April 7, 2016.[2] (Dkt. 66.) Before the Court are two

post-conviction motions. Based on conduct of the Defendants after the trial, the

government has moved to supplement Defendants' Presentence Reports with

---

[1] At the time of trial, the Defendants, Roscoe Benton, III and Desi Najuana Benton were a married couple. Where the Defendants make arguments jointly, they will be so identified. Hereafter, the term "Defendant" refers to Roscoe Benton, III only. This will avoid the need to repeat Mr. Benton's full name throughout this opinion. Mrs. Benton will be identified as "Defendant Desi Benton."

[2] Defendants were originally scheduled to be sentenced on March 9, 2015. (Dkt. 39.) On April 7, 2015, this case was reassigned to the Honorable Judge Linda V. Parker. (*See* April 7, 2015 text-only order.) Their sentencings were reset for April 9, 2015 (Dkt. 44) and again for May 21, 2015 (*See* March 18, 2015 docket entry). The Defendants' May 21, 2015 sentencing was cancelled by Judge Parker on May 22, 2015 in order to resolve several post-conviction motions. (*See* May 22, 2015 text-only notices.) On November 18, 2015, this case was returned to the undersigned, who conducted the trial. (*See* Nov. 18, 2015 text-only order.)

information that it argues would justify adding a 2-point obstruction-of-justice enhancement to the offense level for both Defendants.[3] (Dkt. 49.) In addition, Defendant Roscoe Benton, III has filed a motion for new trial. (Dkt. 50.) Both motions have been fully briefed. For the reasons stated below, the Court will **GRANT** the government's motion to supplement the Presentence Report and **DENY** Defendant Roscoe Benton's motion for a new trial.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The criminal convictions in this matter were for bankruptcy fraud and mail fraud. As background, the Court notes that on December 14, 2009, Defendants Desi and Roscoe Benton filed a voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Michigan. *In re: Roscoe Benton III and Desi N. Benton*, No. 09-36642 (E.D. Mich., Dec. 14, 2009), ECF No. 1. This petition was electronically signed by both Defendants and Attorney Melissa DiGiamberdine. *Id.* at 3. On November 17, 2011, Defendants converted their Chapter 13 bankruptcy to a Chapter 7 bankruptcy. *In re: Roscoe Benton III*, ECF No. 68-70. Defendants have actively participated in the litigation of their bankruptcy case for the past six years, and the proceeding remains open.[4]

---

[3] This motion was filed three times on April 30, 2015. (*See* Dkts. 47-49.) The first two versions of this motion were filed without a brief in support. (*See* Dkts. 47-48.) The third version is complete and includes the brief in support as well as all the listed exhibits. (*See* Dkt. 49.) Because docket entry no. 49 is the only complete version of this motion that was filed, the Court will refer to that version in this order and will terminate docket entries 47 and 48 as filed in error.

[4] Criminal proceedings are explicitly exempted from the protections of the automatic bankruptcy stay. 11 U.S.C. § 362(b)(1) ("does not operate as a stay… of the commencement or continuation of a criminal action or proceeding against the debtor").

**A. Defendants' Convictions for Bankruptcy Fraud and Mail Fraud**

In February 2014, a federal grand jury indictment was returned charging Defendants with three counts of bankruptcy fraud pursuant to 18 U.S.C. § 157(3) and one count of mail fraud pursuant to 18 U.S.C. § 1341. (Dkt. 1.) A superseding indictment was returned on May 21, 2014, adding a fourth count of bankruptcy fraud pursuant to 18 U.S.C. § 157(3). (*See* Dkt. 26, pp. 1-2.)

The charges alleged that Defendants manipulated the bankruptcy process in an attempt to defraud their creditors. As part of a scheme, Defendants represented to the bankruptcy court in documents filed on December 22, 2009 that: (1) they owned two cars worth $3,500 when in fact they owned three cars with a total value well above $3,500 (Count I); and (2) they owned only $1,750.00 in personal property when their personal property was worth much more (Count II). (*Id.* at 2-3.)

The indictment further charged that Defendants engaged in a scheme to defraud State Farm Fire and Casualty Company ("State Farm") by applying for *homeowners* insurance on a property that Defendants were in fact *renting* and then accepting a $184,726.72 check in homeowners' insurance benefits from State Farm sent via the United States Postal Service after a fire destroyed the residence (Count III). (*Id.* at 4-5.)

In Count IV, Defendants were alleged to have: (1) concealed their receipt of the State Farm check from the bankruptcy court; (2) given a false explanation for their failure to make payments to the Chapter 13 Trustee; and (3) converted their

Chapter 13 bankruptcy to a Chapter 7 bankruptcy in order to avoid making any further payments to their creditors. (*Id.* at 5-6.)

Finally, the indictment alleged that Defendants falsely represented to the bankruptcy court on October 18, 2011 that they were making a monthly "rent or home mortgage payment" of $550.00 when they had by that time bought a new home with cash and were not then making either rent or home mortgage payments (Count V). (*Id.* at 7.)

A two-week jury trial began on November 3, 2014. (*See* Dkt. 32.) On November 19, 2014, the jury rendered its verdict. (Dkt. 37.) Defendant Roscoe Benton was convicted of all counts except Count I. (*See id.*) Defendant Desi Benton was convicted of Counts III, IV, and V. (*See id.*) Each Defendant was thus convicted of multiple counts of bankruptcy fraud (Counts II, IV, and V) and the mail fraud count (Count III).

## B. Defendants Argue Post-Conviction that their Bankruptcy Case is Void

Following their convictions, Defendants Roscoe and Desi Benton each submitted sentencing memoranda in March and April 2015 respectively. (Dkts. 45-46.) In his sentencing memorandum, Defendant argues that the Court should not consider his three convictions for bankruptcy fraud when sentencing him because, as he now alleges for the first time, the bankruptcy case upon which these convictions are based was actually never filed on his behalf. (Dkt. 46, p. 4.) Because Defendants never signed the bankruptcy petition in ink, Defendant asserts that the bankruptcy case is void. (*Id.* at 4-6.) Defendant Desi Benton does not raise this

4

argument in her sentencing memorandum (*see* Dkt. 45), but she nevertheless joined Defendant in litigating this issue in the bankruptcy court.

Defendants raised this argument in bankruptcy court by filing an April 6, 2015 motion to void their bankruptcy case. (Dkt. 49, Ex. A.) In their motion, Defendants argue that they "were never required by [their counsel] to physically sign the documents required by the Bankruptcy Code to be filed with the Court." (*Id.* at ¶ 1.) Moreover, Defendants maintain that they never authorized their counsel to "sign any document which required their signature" or "to electronically forge their signatures."[5] (*Id.* at ¶¶ 2-3.)

Because none of Defendants' previous bankruptcy lawyers[6] could produce the original petition[7] with Defendants' ink signatures when subpoenaed to do so,[8]

---

[5] At trial, Defendants did not object when their former bankruptcy attorney, Henry Sefcovic, testified that Defendants had signed a bankruptcy court document, such as their petition to convert their bankruptcy to a Chapter 7. (*See, e.g.,* Dkt. 62, Tr. 131:1-16.)

[6] Since their bankruptcy case was first initiated in December 2009, five bankruptcy lawyers have represented Defendants. Attorneys Melissa DiGiamberdine, Henry Sefcovic, Timothy P. MacDonald, and John L. Topping have appeared on behalf of Defendants in their bankruptcy case. *See In re: Roscoe Benton III*, ECF No. 58, 59, 154, 174. Defendants are currently represented by Attorney Charles J. Schneider, who entered an appearance on February 4, 2015. *Id.*, ECF No. 365.

[7] On March 6, 2015, the bankruptcy court entered an order to compel Attorneys Sefcovic, Topping, and MacDonald to produce "a photocopy of the original, signed Voluntary Petition and any other documents filed with the Court which contained the [Defendants'] electronic signature to [Defendants'] counsel" within 14 days. *In re: Roscoe Benton III*, ECF No. 376. Attorney MacDonald responded by listing several documents that Defendants had signed while he represented them but asserted that "due to the history of the [Defendants'] actions to blame [sic] every predecessor attorney for [Defendants'] own actions," he would make the original documents available for inspection only. *Id.*, ECF No. 369. These documents were reproduced as exhibits to the response. *See id.* at Exs. A-D. Attorney Sefcovic sent Attorney Schneider a letter dated March 20, 2015 in which he stated that he "could not find any of the original Desi and Roscoe III Benton [sic] signatures in [Sefcovic's] storage shed." *Id.*, ECF No. 384, Ex. 6, p. 1.

[8] Pursuant to the United States Bankruptcy Court for the Eastern District of Michigan's administrative procedures for electronic case filing, any paper bearing an original signature must be kept by the filer for five years after a case is closed:

5

Defendants assert that their electronic signatures on the original petition constituted a forgery and the December 2009 filing of their bankruptcy case must therefore be void. (*Id.* at ¶¶5-8.) The bankruptcy court heard oral argument on Defendants' motion on December 8, 2015 and took their motion under advisement. *In re: Roscoe Benton III*, ECF No. 462. As of the date of this order, their motion remains pending.

## C. The Government's Motion to Supplement the  Presentence Reports

On April 30, 2015, the government filed a motion in this case to advise the Court as to events occurring in the Defendants' bankruptcy proceeding. Based on the Defendants' conduct, the government sought to supplement Defendants' presentence reports with information that would support an increase in Defendants' offense levels by two points each pursuant to U.S.S.G. § 3C1.1, which permits such an increase for obstruction of justice. (Dkt. 49, p. 1.)

The government maintains that Defendants are using fraudulent means in an attempt to void their bankruptcy case in the hope that their bankruptcy fraud convictions will be vacated or somehow not considered at sentencing. (Dkt. 49, p. 4.) The government argues that the so-called obstruction-of-justice enhancement should apply because, post-conviction, Defendants supported their motion in

---

Each Paper that must contain an original signature by a person other than the Filer or User, or that is required to be verified under Rule 1008 or as provided in 28 U.S.C. §1746 by a person other than the Filer or User, shall be filed electronically by a Filer or a User. The Paper containing the original signature shall be retained by the Filer or User who files the Paper for five years after the closing of the case or adversary proceeding. This retention does not affect or replace any other retention period required by other applicable laws or rules.

ECF Procedure 10, *available at*
http://www.mieb.uscourts.gov/sites/default/files/courtinfo/ECFAdminProc.pdf.

bankruptcy court with a demonstrably false affidavit. (*Id.*) In this affidavit, both Defendants swore that they never signed or authorized any attorney to sign their original 2009 bankruptcy petition. *In re: Roscoe Benton III*, ECF No. 394, ¶¶4-9.

The government contends that Defendants' affidavit is directly contradicted by their own sworn testimony during the bankruptcy proceedings. On January 20, 2010, approximately one month after Defendants filed for bankruptcy, the Chapter 13 Trustee filed a motion to dismiss based on the Defendants' failure to make plan payments. *In re: Roscoe Benton III*, ECF No. 16. In response, on January 26, 2010, Defendants appeared with Attorney Melissa DiGiamberdine at a 341 hearing (a meeting of the creditors) where they were shown the original bankruptcy petition and testified under oath that the ink signatures on that document were in fact signed by them. (Dkt. 49, Ex. B, 3:22-4:18.) Defendants also testified that they had signed "a number of other pages as well" and that by signing those pages, they acknowledged that they had reviewed the information in those pages and found that information to be true and correct. (*Id.* at 4:19-5:5.) The Trustee's motion to dismiss was withdrawn on January 29, 2010. *In re: Roscoe Benton III*, ECF No. 17.

In response to the government's motion, Defendant Desi Benton argues that she is not subject to the two-level increase for obstruction of justice because, although she filed a motion to void her bankruptcy case supported by the allegedly false affidavit, she is not "using her motion in bankruptcy court in an attempt to vacate her conviction for bankruptcy fraud in this case". (Dkt. 52, pp. 2-3.)

For his part, Defendant acknowledged that the government had moved for "a two-level increase pursuant to U.S.S.G. § 3C1.1" in a brief he filed on May 14, 2015 in support of an adjournment of sentencing, but he did not directly address in that brief whether the PSR should be supplemented or whether the two-point enhancement for obstruction of justice should be applied. (*See* Dkt. 53, pp. 2-3.)

In Defendant's motion for a new trial, filed on May 1, 2015, Defendant argues that he never signed the original bankruptcy petition and thus the bankruptcy case "cannot and should have not have [sic] existed". (Dkt. 50, p. 5.) He points to inconsistencies in the trial testimony of Attorney DiGiamberdine and her supervising attorney, Henry Sefcovic, regarding whether Defendants had signed the petition and where the original copy of the petition was. (*Id.* at 6.) Defendant asserts that the government failed in its "duty to learn of any favorable evidence known to the others acting on the government's behalf" because the Trustee possessed unspecified "favorable evidence bearing on the defendants [sic] intent as well as evidence to impeached [sic] one of the Government's chief witnesses, attorneys Sefcovic and DiGiamberdine" that Defendants never received. (*Id.*).

Although both Defendants acknowledged the government's motion and argument, neither Defendant addresses in any of their motions or briefs the issue of the conflict between their testimony during the 341 hearing and their affidavit.

## D. Defendant Roscoe Benton's Motion for New Trial

Defendant moved for a new trial on May 1, 2015. (Dkt. 50.) This motion was filed pursuant to Federal Rule of Criminal Procedure 33 and alleges the government

failed to disclose exculpatory evidence as required under *Brady v. Maryland*, 373

US 83 (1963).

Defendant argues that the government did not disclose a number of

"documents" that, had they been available to Defense Counsel before trial, would

have changed the outcome of the trial. In particular, Defendant argues that the

government did not, but should have, produced a copy of:

> (1) the land contract that Defendants claimed existed between them and their landlord, Paul Carey, and proved they owned the house they appeared to be renting;
>
> (2) a Cashier's Check dated December 9, 2013 that Defendants provided to the Trustee to pay their creditors;
>
> (3) the original bankruptcy petition bearing Defendants' ink signatures;
>
> (4) the transcript of Defendant Roscoe Benton's deposition taken on January 23, 2012 as part of a Rule 2004 Examination ordered by the bankruptcy court in which Attorney Sefcovic states that Defendants are buying their home on a land contract; and
>
> (5) the transcript of Defendants' 341 hearing held on November 10, 2011 regarding the conversion of their Chapter 13 bankruptcy to a Chapter 7 bankruptcy.

(*See* Dkt. 50, pp. 3-4 and Exs. 1-2, 4-5.) Defendant argues that, had these documents

been produced, he would have used them "to impeach the Government key

witnesses as to the sloppy paperwork of defendants [sic] initial bankruptcy

attorneys, Paul Carey and the insurance company's adjuster as to whether they do

a title search to determine ownership prior to pay out [sic] of claim funds" and thus

the outcome of the trial would have been different. (*Id.* at 8.)

9

The government responded on May 15, 2015. (Dkt. 55.) In its brief, the government argues that Defendant's motion for a new trial is untimely in light of the 14-day deadline imposed by Federal Rule of Criminal Procedure 33(b)(2) to file such motions when they are grounded "on any reason other than newly discovered evidence". (*Id.* at 2.) Moreover, the government asserts that the documents Defendant Roscoe Benton references "were all generated by the defendants themselves" and therefore Defendants "were clearly aware of this information or should have been." (*Id.* at 3.) Finally, Defendant does not show or explain "why he did not present this evidence at trial or, if he had done so, why it would have changed the jury's verdict." (*Id.* at 4.) Defendant filed his reply on May 21, 2015. (Dkt. 56.)

## II.    ANALYSIS

The two motions before the Court are the government's motion to supplement the presentence report (Dkt. 49) and Defendant Roscoe Benton's motion for a new trial grounded on alleged *Brady* violations (Dkt. 50). Each motion will be discussed in turn.

## A. The Motion to Supplement the Presentence Report will be Granted

The government requests that Defendants' February 2015 presentence report be supplemented with information related to their motion to void their bankruptcy case. (*See* Dkt. 49.) In essence, the government wants this Court to consider at sentencing information relating to whether an obstruction-of-justice enhancement,

pursuant to U.S.S.G § 3C1.1, should apply, resulting in a two-level offense level increase for both Defendants. (*Id.* at 1.)

In support of its motion, the government argues that Defendants filed a demonstrably false affidavit in bankruptcy court. The affidavit purported to affirm that Defendants had never signed their original 2009 bankruptcy petition. Defendants, the government maintains, wished to void their bankruptcy proceeding in order to be able to claim that their convictions for bankruptcy fraud should be vacated, and their sentences thereby reduced. (*Id.* at 6-7.) The government argues that this affidavit directly conflicts with Defendants' earlier sworn testimony at a 341 hearing in 2010 where Defendants were shown their original bankruptcy petition, and identified and confirmed their ink signatures on that document. (*Id.* at 4-6.)

Defendants have not directly addressed the issue of their conflicting testimony. In response to the government's motion, Defendant Desi Benton argues that the two-level increase should not be applied to her offense level because she "is not using her motion in bankruptcy court in an attempt to vacate her convictions for bankruptcy fraud in this case". (Dkt. 52, p. 2.)

For his part, Defendant contends in his motion for a new trial that his bankruptcy case is void and therefore this Court should not consider his bankruptcy fraud convictions at his sentencing. However, he does not acknowledge or address the government's arguments on this issue. (Dkt. 50, pp. 4-6.) In a subsequent brief filed on May 14, 2015 in support of a motion to adjourn his sentencing, Defendant

11

acknowledges the government's motion but again fails to challenge its arguments. (*See* Dkt. 53, pp. 2-3.)

The Court will grant the government's motion and allow the Presentence Report to be supplemented as requested by the government. With regard to the whether to apply the two-level offense level increase to both Defendants, U.S.S.G. § 3C1.1 provides that where:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. Examples of conduct covered by this guideline include "committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction" and "[p]roviding materially false information to a judge or magistrate". *See id.* at Application Note 4.

On May 1, 2015, Defendants filed a sworn affidavit in bankruptcy court in support of their motion to void their bankruptcy case. *In re: Roscoe Benton III*, ECF No. 394. In their affidavit, Defendants swear that they:

- Did not sign the voluntary bankruptcy petition filed on their behalf in 2009.
- Did not authorize any attorney "to electronically forge" their signatures.
- Did not sign any document "purporting to convert the case to a chapter 7".

*See id.* at ¶¶ 3-9. The Court notes that, prior to their criminal convictions for bankruptcy fraud, Defendants never raised this issue with the bankruptcy court

during six years of litigation despite fully participating in and benefitting from the bankruptcy proceedings.

It is clear that this affidavit is demonstrably inconsistent with Defendants' prior sworn statements. It conflicts not only with Defendants' prior sworn testimony but also with Defendants' own conduct during six years of bankruptcy proceedings. One month after filing their bankruptcy petition, Defendants testified under oath at a 341 hearing that: (1) the ink signatures on the petition were theirs; (2) they had signed multiple pages; (3) they had reviewed the information in the petition; and (4) this information was correct. (*See* Dkt. 49, Ex. B, 3:22-5:9.) The fact that the original copy of the petition cannot be located six years after the petition was filed and after it has been passed along a chain of five attorneys that have represented Defendants in their bankruptcy case does not prove that the original petition never existed, that it was never signed by Defendants, or that any attorney "electronically forged" Defendants' signatures.

Moreover, Defendants do not explain why they are raising this issue now, after so many years of litigating their bankruptcy case. Throughout the proceedings in bankruptcy court, Defendants had multiple opportunities to assert that they never signed the original petition and never authorized anyone to file the petition on their behalf, or otherwise voluntarily dismiss their case. Instead, Defendants participated in the proceedings, hired five separate attorneys to pursue the bankruptcy, filed myriad motions (some of which were filed pro se),[9] attended and

---

[9] For example, on January 26, 2015, Defendants filed a pro se emergency motion to convert their Chapter 7 bankruptcy back to a Chapter 13 bankruptcy. *In re: Roscoe Benton III*, ECF No. 348, ¶ 9.

testified at hearings, objected to the payment of certain claims, benefitted from the protections available in bankruptcy, and even worked to avoid dismissal when a motion to dismiss was filed.[10]

For example, on October 17, 2011, in response to the Trustee's motion to dismiss, Defendants voluntarily converted their case to a Chapter 7 bankruptcy and filed the required paperwork with the bankruptcy court, including amended schedules I and J. *See In re: Roscoe Benton III*, ECF No. 68, 73. They also testified without protestation at a 341 hearing regarding the conversion in November 2011. (*See* Dkt. 50, Ex. 5.) By converting to a Chapter 7 bankruptcy, Defendants were able to avoid the dismissal of their case for failure to make plan payments.[11] *See In re: Roscoe Benton III*, ECF No. 61. Even where the original petition cannot be found, Defendants' conduct in the bankruptcy proceedings over six years demonstrates that they have ratified and approved of its filing.

Defendants' ultimate goal in filing their affidavit in support of the motion to void their bankruptcy case could not be more transparent. This type of conduct, "providing materially false information to a judge" while attempting to void their bankruptcy case, would appear to fall within the guidelines' language describing the situation where Defendants have  jointly "attempted to obstruct or impede, the

---

[10] As their former bankruptcy attorney Henry Sefcovic testified during their trial, Defendants' bankruptcy "was litigated a lot. The file was a foot thick, maybe, so there was a lot going on." (Dkt. 62, 130:17-19.) Defendants did not rebut this testimony. (*See id.* at 130-31.)

[11] On November 10, 2011, the newly-appointed Chapter 7 Trustee held a second 341 hearing where Defendants affirmed for a second time, under oath, that their petition and schedules as originally filed were truthful and accurate. (Dkt. 50, Ex. 5, 5:12-6:2.) Defendants did not testify that their signatures were forged or that their bankruptcy case had been converted to a Chapter 7 without their authorization.

14

administration of justice with respect to" their sentencing for bankruptcy fraud in this Court. *See* U.S.S.G. § 3C1.1. However, the Court will not rule on the applicability of this enhancement until Defendants have been given the opportunity to file any objections.

Consequently, the government's motion to supplement the Presentence Report will be granted. Defendants will have the opportunity to file any objections to their Presentence Reports as amended to contain this information within 30 days of the date of this order. If no objections are made, the Court will consider the government's request to apply the two-point enhancement for obstruction of justice to be unopposed.

## B. Defendant Roscoe Benton's Motion for a New Trial will be Denied

Defendant contends that a new trial should be granted based on the government's alleged *Brady* violations. (Dkt. 50.) A motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33") may be based on "newly discovered evidence" or "other grounds." *See* Fed. R. Crim. P. 33(b)(1) and (b)(2). Defendant argues that although the government provided "a large volume of documents" in response to his request for "all Brady material," the government failed to provide a copy of:

(1) the land contract that Defendants claimed existed between them and their landlord, Paul Carey;

(2) a Cashier's Check dated December 9, 2013 that Defendants provided to the Trustee to pay their creditors;

(3) the original bankruptcy petition bearing Defendants' ink signatures;

15

(4) the transcript of Defendant Roscoe Benton's deposition taken on January 23, 2012 as part of a Rule 2004 Examination ordered by the bankruptcy court; and

(5) the transcript of Defendants' 341 hearing held on November 10, 2011 in relation to the conversion of their Chapter 13 bankruptcy to a Chapter 7 bankruptcy.[12]

(*See* Dkt. 50, pp. 3-4 and Exs. 1-2, 4-5.)

In its response, the government argues that Defendant's motion should be dismissed as untimely pursuant to Rule 33(b)(2). Because Defendant's motion is does not implicate newly discovered evidence, Rule 33(b)(2) requires that the motion be filed "within 14 days after the verdict or finding of guilty." Defendant's motion was filed approximately six months after the jury verdict. (*See* Dkts. 37, 50.)

## 1. Legal Standard

When determining a motion for a new trial, Rule 33(a) provides that, upon a Defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33(b) distinguishes a motion based on newly discovered evidence from one based on other grounds:

(1) Newly Discovered Evidence. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

(2) Other Grounds. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33(b).

---

[12] The government, for its part, states with respect to the hearing transcripts that it "did not, in fact, have the referenced transcripts before the trial, although it had listened to the recordings of those hearings." (Dkt. 55, p. 3.)

To prevail on a motion for a new trial based on newly discovered evidence, a Defendant must meet the four-prong test adopted in *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir. 1982). Under the *Barlow* test, a Defendant is required to show that the new evidence: (1) was discovered after the trial; (2) could not have been discovered earlier with due diligence; (3) is material and not merely cumulative or impeaching; and (4) would likely produce an acquittal. *Barlow*, 693 F.2d at 966; *see also United States v. Hanna*, 661 F.3d 271, 297 (6th Cir. 2011) (citing *United States v. Blackwell*, 459 F.3d 739, 768 (6th Cir. 2006)); *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986).

Defendant's motion, however, is grounded on an alleged *Brady* violation. (Dkt. 50, p. 1.) The applicable standard is different. *Hanna*, 661 F.3d at 298; *see United States v. Frost*, 125 F.3d 346, 382 (6th Cir. 1997). "[W]hen the defendant asserts that the new evidence at issue is exculpatory evidence which the government failed to turn over in violation of *Brady*, he 'should not have to satisfy the severe burden of demonstrating that newly discovered evidence probably would have resulted in acquittal.'" *Frost*, 125 F.3d at 382 (quoting *United States v. Agurs*, 427 U.S. 97, 111 (1976)). "Rather, the defendant must show only that the favorable evidence at issue was 'material,' with 'materiality' defined according to opinions interpreting the *Brady* doctrine." *Id.* (citing *O'Dell*, 805 F.2d at 641).

When considering a Rule 33 motion grounded in an alleged *Brady* violation, a Defendant will be required to meet the usual four-part *Barlow* test if the Court finds that no *Brady* violation has occurred. *See Hanna*, 661 F.3d at 298. Here, the

17

Court concludes that there was no *Brady* violation and that Defendant has failed to satisfy the *Barlow* test.[13]

## 2. Discussion

### a. The Materials are not "Newly Discovered Evidence"

Motions for a new trial based on newly discovered evidence are "disfavored and should be granted with caution." *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). Defendant states that his motion is based on a "failure to disclosed [sic] Brady material" and cites the standard applicable to a motion for new trial grounded on a *Brady* violation.[14] (Dkt. 50, p. 1.) Defendant does not initially characterize the documents he references in his motion as "newly discovered evidence." Only in Defendant's reply brief does he insert the conclusory statement that "Defendant clearly has stated that there was newly discovered evidence" that was "requested by defendant before trial." (Dkt. 56, p. 1.) Defendant is not clear as to whether he contends that all the materials referenced in his motion are "newly discovered evidence," or only some of them. Although this argument is poorly developed, the Court will try to address it.

Defendant misconstrues the meaning of "newly discovered evidence." It is clear that none of the material Defendant references may be at the same time both

---

[13] While the denial of a motion for new trial based on *Brady* violations is reviewed under an abuse of discretion standard, a District Court's "determination as to the existence of a *Brady* violation is reviewed de novo." *United States v. Graham*, 484 F.3d 413, 416-17 (6th Cir. 2007) (internal citation omitted).

[14] The applicable standards, as discussed above, are different when analyzing a motion for a new trial based on newly discovered evidence than they are for a motion based on an alleged *Brady* violation. *See, e.g.*, *United States v. Dhaliwal,* No. 1:08-CR-119-2, 2013 WL 664902, at *5-6 (W.D. Mich. Feb. 22, 2013), aff'd (Nov. 1, 2013).

"newly discovered evidence," and evidence "requested by defendant before trial." "Newly discovered evidence" within the meaning of Rule 33 is evidence discovered only *after* trial which could not have been discovered earlier even with due diligence. *See Hanna*, 661 F.3d at 297 (holding that Defendant bears the burden of establishing that the evidence: (i) was discovered after trial; (ii) could not have been discovered earlier with due diligence; (iii) is material and not merely cumulative or impeaching; and (iv) would likely produce an acquittal if the case were retried.)

The evidence described in Defendant's motion does not satisfy the *Barlow* criteria. First, Defendant indicates that this evidence would have been used at trial to impeach government witnesses. It is therefore the kind of evidence that is "merely cumulative or impeaching". (Dkt. 50, p. 6.) Second, the Court disagrees with Defendant's conclusory statement that the availability of the evidence would have changed the outcome of his trial. Defendant does not explain how the evidence he cites in his motion would have been likely to cause a reasonable person to reach a verdict of not guilty. One of the items of evidence, the alleged land contract, was never shown to have even existed, and the other items referenced do not in any way contradict the government's theory of fraud. Defendant does not demonstrate otherwise.

Third, the first prong of the *Barlow* test requires that newly discovered evidence be evidence that is not known by the Defendant at the time of trial. It is well settled in the Sixth Circuit, and various other Circuits, that evidence is not newly discovered if a Defendant was aware of the evidence at trial, even if such

evidence was unavailable to him during trial. *See, e.g., United States v. Glover*, 21 F.3d 133, 138-39 (6th Cir. 1994); *United States v. Jasin*, 280 F.3d 355, 362, 364 (3d Cir. 2002) (holding that "evidence known but unavailable at trial does not constitute 'newly discovered' within the meaning of Rule 33"); *see also, United States v. Theodosopoulos*, 48 F.3d 1438, 1448-49 (7th Cir. 1995) (same); *United States v. Muldrow*, 19 F.3d 1332, 1339 (10th Cir. 1994) (same); *United States v. Lockett*, 919 F.2d 585, 591-92 (9th Cir. 1990) (same).

Here, all of the documents Defendant references - a copy of a land contract Defendants and the owner of the rental property allegedly entered into, a Cashier's Check Defendants caused to be issued to the bankruptcy court Trustee, the original copy of Defendants' bankruptcy petition, and transcripts of Defendants' own testimony - are all documents that Defendants created themselves or participated in creating before their trial. Defendants would certainly have been aware of, if not in control of, these documents prior to and during trial. Any one of these documents, to the extent some ever existed at all,[15] was thus surely discoverable by Defendants prior to trial with due diligence. Defendant does not argue or establish otherwise.

---

[15] The existence of a land contract between Defendants and the homeowner from whom they were renting was the source of much dispute at trial. At trial, Defendants asserted that they had purchased the home they were renting under a land contract in order to try to prove that Defendants were not committing fraud by representing that they owned the home when they applied for and received a homeowner's insurance policy. Their landlord denied ever entering into such a contract with Defendants and Defendants have never been able to produce a copy of such a land contract from their own records or the records of any other trial witness. In finding Defendants guilty, the jury determined that Defendants were renting the home and committed fraud in applying for, and later collecting on, a homeowner's insurance policy. (*See, e.g.*, Dkt. 62, 80:23-82-17; 110:1-111:13; 115:8-22; 148:10-149:4; 192:11-193:23; 205:8-17.)

Accordingly, the Court finds that the documents at issue are not "newly discovered evidence" within the scope of Rule 33 because Defendant cannot, and does not even attempt to, satisfy the four-prong *Barlow* test.

### b.  There is no *Brady* Violation

Because Defendant's motion does not concern newly discovered evidence, it is untimely pursuant to Rule 33(b)(2), and the government objects to it on that basis. (Dkt. 55, p. 2.) Defendants were convicted on November 19, 2014, but Defendant did not file his motion for a new trial for another six months. (*See* Dkts. 37, 50.) The Court lacks jurisdiction to consider an untimely motion for a new trial. *United States v. Koehler*, 24 F.3d 867, 869 (6th Cir. 1994) (citing *United States v. Smith*, 331 U.S. 469, 475-76 (1947)).

Even if the motion were timely, however, Defendant's argument alleging a *Brady* violation fails. *Brady v. Maryland* requires disclosure of evidence by the prosecution when it is both favorable to the accused and "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The principles in *Brady* have been extended to the disclosure of impeachment evidence in cases where the "reliability of a given witness may well be determinative of guilt or innocence." *Giglio v. United States*, 405 U.S. 150, 154, (1972) (internal quotation marks omitted); *see also United States v. Smith*, 749 F.3d 465, 489 (6th Cir. 2014).

To establish a *Brady* violation, a Defendant must show that the Government suppressed evidence that was favorable to the defense, either because it is

21

exculpatory, or because it is impeaching, and that the suppressed evidence was material. *See United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) (internal citation omitted); *see also Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Reversal is warranted only when "there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Smith*, 749 F.3d at 489 (quoting *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994)).

Prior to trial, Defendant made a general request for "all Brady material" and accuses the government of failing to provide the aforementioned documents in violation of *Brady*. (Dkt. 79, pp. 3-4.) Defendant, however, does not clarify how this evidence is exculpatory or impeaching, or how, in light of all the other evidence available during the trial, this evidence would have changed the ultimate result. Defendant argues in a conclusory fashion that the evidence at issue could have been used by Defense Counsel "to impeach the Government key witnesses as to the sloppy paperwork of defendants [sic] initial bankruptcy attorneys, Paul Carey and the insurance company's adjuster as to whether they do a title search to determine ownership prior to pay out [sic] of claim funds". (Dkt. 50, p. 8.) Moreover, Defendant argues that the check he caused to be issued to the Trustee is "evidence bearing on the defendants [sic] intent". (*Id.* at 6.) Defendant maintains that the government therefore failed in its duty to locate and make these materials available prior to trial. (*See id.*)

This lack of clarity and analysis is a significant flaw in Defendant's argument that a *Brady* violation has occurred. For example, Defendant asserts that his counsel would have impeached government witness Paul Carey, but does not explain how or with what evidence specifically, nor does he explain how the result of his trial would have been different had he been able to impeach Carey with any of the evidence at issue. (*See* Dkt. 50, pp. 7-8.) To the extent that Defendant is suggesting that he would have impeached any witness with the land contract Defendants claim to have entered into with their landlord Carey, Defendants themselves have never produced it and its existence has never been verified by other means. The Court cannot simply take Defendant's word for it. It is impossible to fault the government for failing to produce a particular document that it never could have possessed and withheld because, according to the weight of the available evidence, the document in question never existed in the first place.

Defendant also argues that he would have been able to impeach Attorney Sefcovic had the government provided a copy of the transcript from Defendants' January 23, 2012 bankruptcy hearing with the Trustee.[16] (Dkt. 56, p. 2.) At that hearing, Defendant was asked whether he owned any real property in light of the fact that his petition indicated that Defendant did not own any real property. (Dkt. 56, Ex. 2, 20:1-3.) Before Defendant could answer, Attorney Sefcovic interjected and stated that Defendant had a land contract. (*Id.* at 20:4-5.) Defendant then concurred by stating that he "was owning it." (*Id.* at 20:6-7.) When the Trustee then observed

---

[16] Defendant provided only one page of this transcript as an exhibit attached to his reply brief. (*See* Dkt. 56, Ex. 2.)

that there had been no disclosure of owning anything on a land contract, Attorney Sefcovic clarified that Defendant's "plan is making the plan payments on that house." (*Id.* at 20:8-11) The Trustee responded by reiterating that if such a land contract existed and if it had value, it should have been disclosed to the bankruptcy court. (*Id.* at 20:13-15.) Instead, as the Trustee stated in the hearing, Defendants had listed a lease agreement with Paul Carey on Schedule G, not a land contract. (*Id.* at 20:20-22.)

Defendant does not explain how this transcript, when taken as a whole, is exculpatory or impeaching, nor can the Court. First, this exchange between Defendant, the Trustee, and Sefcovic emphasizes Defendants' general lack of candor with the bankruptcy court. Second, the fact that Defendants listed a lease agreement rather than a land contract on their Schedule G favors the argument that there never was a land contract until Defendants found the need to invent one in order to justify collecting homeowners' insurance benefits on a house they were in fact renting.

Finally, Attorney Sefcovic's assertion during the hearing that Defendant had a land contract does not prove that the contract existed nor is it newly impeaching in light of Defense Counsel's questioning at trial. At trial, Defense Counsel asked Attorney Sefcovic about Defendants' notice of voluntary conversion of their bankruptcy to a Chapter 7 that was the subject of the January 23, 2012 hearing in their bankruptcy case. (Dkt. 62, 147:18-24.) Defense Counsel observes that on that form, Attorney Sefcovic indicated that Defendants had a land contract with Paul

24

Carey. (*Id.*) Defense Counsel then asked why the attorney would allege that Defendants had a land contract without proof that the land contract existed. (*Id.* at 148:10-149:7.) In response, Attorney Sefcovic testified that "all the information I had came from my clients," that he had no land contract, and that he asked for a copy of the land contract many times but Defendants never provided one. (*Id.*)

Attorney Sefcovic thus admitted at trial under cross examination that he had alleged in bankruptcy court, based on representations from Defendants, that Defendants had a land contract, but that he had never actually seen or received a copy of it. (*Id.* at 148:10-149:7.) The jury was certainly aware of Defendants' argument regarding the land contract as several witnesses, including Attorneys Sefcovic and DiGiamberdine, were questioned about it by Defense Counsel. (*See generally* Dkt. 62.) In sum, it is unclear how the hearing transcripts, or any of the evidence in question that relates to the land contract, would have been exculpatory or impeaching, or would have altered the outcome of the trial.

Moreover, as a transcript of a bankruptcy hearing is entirely available to a party in the bankruptcy, this evidence was not in any way in the exclusive control of the government. Defendants participated in the bankruptcy proceedings and could easily have obtained a transcript of the hearing if they so desired.

Defendant also fails to explain how the "sloppy paperwork", the allegedly bad record-keeping of his bankruptcy attorneys, or the fact that the original bankruptcy petition with Defendants' wet signature was not produced at trial would have changed the outcome of the trial or otherwise shown that Defendants were not

25

guilty of bankruptcy fraud and mail fraud as alleged. Defendant states that this is "favorable evidence bearing on the defendants [sic] intent as well as evidence to impeached [sic] one of the Government's chief witnesses, attorneys Sefcovic and DiGiamberdine". (Dkt. 50, p. 6.) In his reply brief, he adds that this evidence "at least purports to show that attorney's [sic] Sefcovic and DiGiamberdine were either sloppy record keepers or ran a bankruptcy mill (analogous to a prescription mill)." (Dkt. 56, p. 1.) While this evidence (or allegations) might speak to the record-keeping habits of Defendants' bankruptcy attorneys, it is not clear how this particular evidence would have made any difference insofar as the criminal charges against Defendants are concerned.

The same is true regarding Defendant's assertion that this material would have been used to somehow impeach "the insurance company's adjuster as to whether they do a title search to determine ownership prior to pay out of claim funds." (*Id.*) What bearing this has on whether Defendants defrauded State Farm by misrepresenting themselves as homeowners when they were in fact renters and then collecting benefits under a homeowners' insurance policy is unclear.

Finally, Defendant maintains that he took out a loan and issued a $205,000.00 check to the Trustee to pay his creditors. (Dkt. 56, p. 2.) Defendant asserts that if the government had provided him with a copy of this check prior to trial, "the defense would have been able to argue to the jury that the check was evidence that defendant did not have the intent to defraud its [sic] creditor." (*Id.*) Defendant, however, does not explain how this check would have changed the

26

outcome of his trial in light of all the evidence the government presented of Defendants' scheme to defraud, or why he was unable to present to the jury a check that he himself had issued prior to trial.

This speaks to the second significant flaw in Defendant's argument: that the evidence described in his motion for a new trial was equally available to Defendant, or even more available to him than to the government, prior to trial. As noted above, the documents Defendant references in his motion were either generated by him and in his personal control (the "land contract"), or involved his direct participation in their creation (Cashier's Check to the Trustee, original bankruptcy petition, transcripts of his own hearing and deposition testimony). *Brady* "is concerned only with cases in which the government possesses information which the defendant does not." *Graham*, 484 F.3d at 417. Accordingly, "there is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source." *Id*. This is because, as the Sixth Circuit has observed, in such cases "there is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).

Defendant clearly "knew or should have known the essential facts permitting him to take advantage of the information" he claims the government failed to disclose in violation of *Brady*. He not only was aware of or participated in their creation, but the documents in question would also have been available to Defendant from sources other than the government. For example, even if Defendant

27

did not sign the original bankruptcy petition, he was certainly aware that such a petition had been filed on his behalf given that he testified to its existence about a month later at a 341 hearing in his bankruptcy case. He was also present and testified at the hearings in question, caused the check to the Trustee to issue on his own initiative, and, assuming it ever existed, drafted and entered into the land contract with his landlord. The Court finds no *Brady* violation here.

Defendant's motion fails to meet the four-part "newly discovered evidence" test. It is therefore untimely pursuant to Rule 33(b)(2). Even if the Court were to reach the merits however, Defendant does not establish that the failure to disclose the categories of evidence described in his motion constituted a *Brady* violation. There is no constitutional duty of a prosecutor to disclose "everything that might influence a jury." *Agurs*, 427 U.S. at 109. Defendant's motion for a new trial must therefore be denied.

### III.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion to supplement the presentence report (Dkt. 49) is **GRANTED**. The Court will consider the evidence submitted by the government in support of a finding pursuant to U.S.S.G. § 3C1.1 that the offense levels of Defendants Desi Najuana Benton and Roscoe Benton, III should be increased by two levels each. Within **30 days** of the date of this order, Defendants may file objections to the government's request to apply this two-level increase to their respective offense levels.  **IT IS FURTHER**

**ORDERED** that Defendant Roscoe Benton, III's motion for a new trial (Dkt. 50) is

**DENIED**.

　　　**SO ORDERED**.

　　　　　　　　　　　　　　s/Terrence G. Berg
　　　　　　　　　　　　　　TERRENCE G. BERG
　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

Dated:  February 3, 2016

## Certificate of Service

I hereby certify that this Order was electronically submitted on February 3, 2016,

using the CM/ECF system, which will send notification to each party.

　　　　　　　　　　　　By:  s/A. Chubb
　　　　　　　　　　　　　　Case Manager