UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                Case No. 14-20082
v.                                  HON. TERRENCE G. BERG
                                       HON. STEPHANIE D. DAVIS

D-1    ROSCOE BENTON, III

        Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT ROSCOE BENTON, III'S MOTION FOR RECONSIDERATION (DKT. 70)

Defendant Roscoe Benton, III ("Defendant" or "Benton") and his co-Defendant spouse Desi Najuana Benton ("Desi Benton") are scheduled to be sentenced upon convictions for multiple counts of bankruptcy fraud and one count of mail fraud on May 5, 2016. (*See* Dkt. 37.) Defendant now seeks reconsideration of this Court's Order denying Defendant's motion for a new trial and granting the Government's motion to supplement Defendants' Presentence Reports. (*See* Dkt. 69.)

In an attempt to undermine the legitimacy of his bankruptcy fraud conviction, Benton returned to the bankruptcy court after being found guilty in November 2014 and petitioned the bankruptcy court to void his six-year-old case on the ground that none of the attorneys who represented him in that action could produce the original bankruptcy petition bearing Benton's signature in ink. *See In re: Roscoe Benton III and Desi N. Benton*, No. 09-36642 (E.D. Mich., Dec. 14, 2009), ECF No. 384, 464, 483. After holding three evidentiary hearings and allowing

arguments, the bankruptcy court denied Defendants' motion to void the bankruptcy case on February 12, 2016. In its opinion, the Bankruptcy Judge found Benton's credibility to be "severely damaged".[1] *Id.*, ECF No. 463, pp. 1, 17-18, 20.

Defendant made the same argument to this Court in a May 1, 2015 motion for a new trial. (Dkt. 50.) Defendant argued that a new trial was warranted because his alleged failure to have actually signed the bankruptcy petition was somehow knowable by the government, and that the government's failure to disclose this "fact" amounted to a failure to disclose exculpatory evidence as required under *Brady v. Maryland*. This Court denied Defendant's motion as untimely pursuant to Federal Rule of Criminal Procedure 33(b)(2) because it was filed nearly six months after his conviction and was based on grounds other than "newly discovered evidence.". (Dkt. 69, pp. 17, 28.)

In that same order, this Court granted the government's motion to amend Defendant's presentence report to include his efforts to void his bankruptcy case. (*Id.* at 28.) At sentencing, the Court will consider whether Benton's conduct in seeking to void his bankruptcy case supports the government's argument that a 2-point obstruction-of-justice enhancement should be applied to Defendant's offense level, based on conduct occurring after his trial. (*Id.*)

---

[1] Among other concerns, the Bankruptcy Judge was particularly disturbed by Defendant's admission that he knowingly filed documents with that court that were purported to have been signed by his wife but were actually signed by another woman. *In re: Roscoe Benton III*, ECF No. 463, p. 18. The Bankruptcy Judge also found that Defendant had made "inconsistent statements" about his 2009 bankruptcy petition – Defendant "stated on numerous occasions that a Chapter 13 Petition was filed and, by implication, signed by him" but was now asserting the opposite under circumstances where he "had much to gain". *Id.*

2

Both Defendant and his co-Defendant spouse were granted 30 days from the date of that Order to file objections "to the government's request to apply the two-level increase to their respective offense levels." (*Id.*) Defendant's revised Presentence Report was disclosed on or about March 5, 2016. Defendant filed his objections on March 19, 2016. Co-Defendant Desi Benton's revised Presentence Report was disclosed on March 1, 2016, and she filed her objections on or about March 3, 2016. Defendants' objections will be addressed by the Court at the time of sentencing.

In denying Defendant's motion for a new trial, the Court indicated that: (1) there was no *Brady* violation; and (2) Defendant's affidavit in support of his motion to void his bankruptcy case ("the affidavit") was demonstrably false in light of his own sworn testimony at several bankruptcy hearings and his own conduct during six years of bankruptcy proceedings. (*Id.* at 12-16, 21-28.)

Represented by new counsel, Defendant now seeks reconsideration of the Court's decision denying his motion for new trial and granting permission to supplement the Presentence Reports. (Dkt. 70.) Defendant argues that this Court erred in concluding that the affidavit filed by Defendant on May 1, 2015 in support of his motion to void his bankruptcy case[2] was demonstrably false and points to the bankruptcy court's order and opinion in support of his assertion. (*Id.*) According to Defendant, this Court misapprehended and misinterpreted Defendant's testimony

---

[2] In that affidavit, in relevant part, both Defendants swore that they never signed their original 2009 bankruptcy petition, did not authorize any attorney "to electronically forge" their signatures, and did not sign any document "purporting to convert the case to a chapter 7". *In re: Roscoe Benton III*, ECF No. 394, ¶¶4-9.

3

at a 341 hearing on January 26, 2010, resulting in an error that must be corrected. (*Id.* at 6.)

Moreover, Defendant asserts that had his trial counsel only been aware of the "ink signature issue" at trial, he "could have more vigorously and effectively impeached, through a more informed cross-examination, Defendant's bankruptcy attorneys at trial". (*Id.*) In so doing, Defendant believes he would have established that these attorneys "participated in a forgery regarding Defendant's initial bankruptcy petition" and that "it was them, or one of them, rather than Defendant, who had misrepresented Defendant's financial background in that petition" only to later hide "their misdeed by 'losing' key documents from the bankruptcy file they have 'maintained' on [Defendant's] behalf." (*Id.*)

These allegations do not justify reconsidering the Court's previous Order. Neither in the evidence presented to the jury in this case, nor in any adduced before the Bankruptcy Court, is there any proof that would support the kind of conspiracy on the part of Defendant's bankruptcy attorneys which Defendant is alleging. Reviewing the motion to reconsider, the Court finds no new issues or facts that justify reconsidering its denial of Defendant's motion for a new trial.

Under the applicable Local Rule, a Court may grant a motion for reconsideration if the movant satisfactorily shows that: (1) a palpable defect misled the parties and the Court; and (2) correcting the defect would result in a different disposition of the case. E.D. Mich. L.R. 7.1(h)(3). A defect is palpable if it is "obvious, clear, unmistakable, manifest, or plain." *Olson v. Home Depot*, 321 F. Supp. 2d 872,

4

874 (E.D. Mich. 2004). A motion for reconsideration should not be granted if it "merely present[s] the same issues ruled upon by the court, either expressly or by reasonable implication." *Id.*

As a threshold matter, Defendant does not challenge this Court's finding that his motion for a new trial was untimely by several months and thus had to be dismissed. (*See* Dkt. 70.) Pursuant to Rule 33(b)(2), a motion for a new trial based on any grounds *other than* "newly discovered evidence" must be filed within 14 days after the verdict. Fed. R. Crim. P. 33(b)(2). Here, Defendant does not base his motion on any newly discovered evidence, yet he waited nearly six months file his motion on *Brady* grounds. The government objected to the timeliness of the motion (Dkt. 55, p. 2), and this Court agreed. Defendant supplies no reason for reconsidering the soundness of this conclusion.

Defendant also argues that this Court erred with respect to its analysis of the government's request to supplement the Presentence Report. In particular, Defendant contends that the Court was incorrect in finding that the affidavit was demonstrably false. In this affidavit, both Defendants swore that they never signed or authorized any attorney to sign their original 2009 bankruptcy petition. *In re: Roscoe Benton III*, ECF No. 394, ¶¶4-9. Defendants also swore that they did not sign any document "purporting to convert the case to a chapter 7". *Id.* at ¶¶3-9. At bottom, Defendants are asserting, under oath and after six years of bankruptcy litigation and several convictions for bankruptcy fraud, that they never meant to

file for bankruptcy at all and this is all a fraud perpetrated by their lawyers.³ *See id.*

In his motion, Defendant points to transitional language in the bankruptcy court's opinion stating that, because no attorney could produce Defendant's original ink signature on the 2009 bankruptcy petition, "the paper is now in question and may be subject to attack…" (Dkt. 70, p. 8.) Defendant also relies on the bankruptcy court's statement that this failure "has evidentiary effect". (*Id.*) Defendant's reliance on this portion of the opinion is misplaced. The bankruptcy court actually states that the fact that the original petition with Defendant's ink signature is missing "has evidentiary, but not substantive effect." *In re: Roscoe Benton III*, ECF No. 463, p. 14. The bankruptcy court further states that, because no original has been produced, "the evidentiary presumption in favor of appropriateness of the paper is now in question and may be subject to attack and, if appropriate, the striking of that paper or the voiding or dismissal of the case." *Id.* at 15. The bankruptcy court then examined the facts and ultimately concluded, however, that they did *not support voiding the case. Id.* at 15-20.

Defendant also argues that the transcript from Defendant's 341 hearing on January 26, 2010 shows that he did not verify his original signature on the copy of the petition he was being shown, but rather the electronic signature. (Dkt. 70, pp. 8-9). In particular, Defendant points to the following language from the transcript:

---

³ Notably, the Bankruptcy Judge had little difficulty concluding that Defendant and his co-Defendant spouse "were well aware that they were in Bankruptcy Court and that they were there on their volition". *In re: Roscoe Benton III*, ECF No. 463, p. 16. As Defendant was "well aware" that he was voluntarily in bankruptcy court, to claim otherwise is indeed demonstrably false. It is inconsistent with Defendant's prior sworn testimony and his own conduct in bankruptcy court.

6

> Q. There's a signature line right there. Sir – and your attorney has the original of that. Sir, can you identify your signature there?
>
> A. (Defendant) Yes.

(*Id.* at 9.) Defendant contends that the Court erred in concluding, based on this transcript, that Defendant signed his bankruptcy petition in ink. Consequently, it was error to find the affidavit in question demonstrably false. (*Id.* at 8-10.)

This argument is without merit. A more complete excerpt of that same transcript, included by the bankruptcy court in its opinion, contains the following subsequent exchange:

> Q. And *when you signed those papers, did you sign a number of other pages* as well?
>
> A. (Defendant) Yes.
>
> …
>
> Q. Are there changes to that information *since the day you signed*?
>
> A. (Defendant) No.

*In re: Roscoe Benton III*, ECF No. 463, p. 3 (emphasis added). The bankruptcy court also cites to Defendant's testimony in a November 10, 2011 meeting of the creditors where Defendant was asked whether his bankruptcy schedules were "a true and accurate reflection of [his] financial condition *at the time [he] signed them*" to which he answered "[y]es." *Id.* at 5 (emphasis added).

In its opinion, the bankruptcy court documents and discusses several instances in which Defendant and his co-Defendant spouse "either admitted that they filed a Chapter 13 Petition on December 14, 2009, or affirmatively stated that

7

such a Petition was filed." *See generally id.* Although Defendants were given many opportunities over the years to alert the bankruptcy court to any fraud and tell the judge that they did not sign their 2009 bankruptcy petition, they never did that. Rather, Defendant and his spouse consistently reaffirmed that they had filed it, and, on some occasions, that they signed it.

Moreover, this Court's ruling was not based solely on the transcript from one bankruptcy hearing. (*See* Dkt. 69, pp. 12-15) Other hearings, including the November 11, 2011 hearing (also referenced by the bankruptcy court), as well as Defendant's active participation in the bankruptcy proceedings, also supported a finding that the affidavit was false. (*See id.*) At the heart of Defendant's assertions in the affidavit is that he never wanted to file bankruptcy, that he never authorized anyone to file bankruptcy on his behalf, and that he was not a voluntary participant in the proceeding. *See In re: Roscoe Benton III*, ECF No. 463. This version of history is completely belied by Defendant's conduct as a whole. Defendant offers no basis to reconsider the conclusion that the affidavit is demonstrably false.

Defendant also maintains that the trial would have been different had his lawyer been made aware of the "ink signature issue".[4] (Dkt. 69, pp. 25-28.) At trial, the bulk of the evidence against Defendant consisted of bankruptcy court filings and

---

[4] Defendant argues that Defense Counsel would have used "Procedure 10" to impeach several witnesses. (Dkt. 70, p. 10.) Procedure 10, as the bankruptcy court explained in its opinion, is a rule that requires the attorney to retain the "paper containing the original signature" for five years after a case is closed. *In re: Roscoe Benton III*, ECF No. 463, p. 13-14. The remedy for failing to do so is not the voiding or dismissal of a bankruptcy case, however, but rather the disgorgement of fees. *Id.* As the bankruptcy court clarifies, Procedure 10 "does not suggest that the document was improperly filed or is inaccurate" if the "wet signature" is not available (*id.* at 15), thus its use as an impeachment tool is questionable.

related documents. Defendant's bankruptcy proceeding was discussed at length and his forms and schedules were examined in detail. All of these documents, including Defendant's original 2009 bankruptcy petition, were known to Defendant prior to trial. Defendant even participated in creating many of them.

The fatal flaw in Defendant's argument is that the only people who could have made any of Defendant's defense attorneys aware of any "ink signature issue" *were Defendant and his co-Defendant spouse* – not the government. Defendant did not raise this issue with any court until March 2015. As late as January 26, 2015, two months after his conviction, Defendant effectively re-affirmed before the bankruptcy court that he originally filed for Chapter 13 bankruptcy back in December 2009 by making a motion to convert his Chapter 7 case back to a Chapter 13 petition. *In re: Roscoe Benton III*, ECF No. 463, p. 16.

Defendant also raises, as he did during the trial and in his motion for new trial, the issue of the "land contract" allegedly executed between himself and his landlord, Paul Carey. (Dkt. 70, p. 10.) He argues that Defense Counsel would have been able to undermine the government's argument that the land contract never existed if Defense Counsel had been aware of the "ink signature issue" and would have been more effective in cross-examining Defendant's bankruptcy lawyers. (*Id.*)

As a threshold matter, this Court's review of Defendant's 2009 bankruptcy petition and Defendant's 2010 amended statement of his current monthly income show references only to "Debtor's lease on home" and to a "lease agreement for the property at 5322 Jamestown place, Grand Blanc, MI"; the first reference to a land

9

contract that this Court found among Defendant's bankruptcy filings was in Defendant's 2011 notice of voluntary conversion to a Chapter 7 bankruptcy. *See In re: Roscoe Benton III,* ECF Nos. 1, 12, 33, 68.

Second, Trial Counsel's lack of awareness of the "ink signature issue" can only be attributed to Defendant's own failure to be candid with him about this issue, not to anything the government did or failed to do. The land contract is the type of evidence that one would reasonably expect the Defendant to be aware of, if not in control of, prior to trial, and therefore not something the government had a duty to locate and disclose. Third, as this Court explained in its Order, during the criminal trial Defendant's bankruptcy attorneys were repeatedly asked about the land contract on cross examination, and any arguable references to the land contract in Defendant's bankruptcy documents were explored. (Dkt. 69, pp. 22-25.) Finally, the owner of the home where Defendants were living, Paul Carey, testified at trial (but not before the bankruptcy court) that the land contract did not exist, and his trial testimony would not have been subject to impeachment using Procedure 10. Even if the "ink signature issue" had been fully raised at trial, it is unclear how this would have changed the outcome of the trial in light of all the other evidence against Defendant. The jury was well aware of Defendant's arguments regarding the land contract and clearly rejected them beyond a reasonable doubt.

As for Defendant's argument that this Court must give weight to the bankruptcy court's "factual finding" that the land contract existed (Dkt. 70, p. 11), an examination of the bankruptcy court's opinion demonstrates that the references

to the land contract appear to be in the nature of a summary of Defendant's version of the facts rather than a formal factual finding. *See In re: Roscoe Benton III*, ECF No. 463, p. 2. From reviewing the audio recordings of the hearings conducted before the bankruptcy court on Defendant's motion, it is not clear that the parties were even disputing whether there was a land contract, as the parties disputed in the criminal trial, nor was the issue of a land contract's existence material to the resolution of the motion before the bankruptcy court. *See id.* at ECF No. 395, 446, 462. Carey, for example, did not testify. *See id.*

In fact, in response to State Farm's January 16, 2015 motion regarding its bankruptcy court claim for the money paid to Defendants under a homeowners' policy for the loss of a home they were in fact renting (*Id.* at ECF No. 343), Defendants did not explicitly contest that they were renters, and emphasized instead the loss of the contents of the home (*Id.* at ECF No. 387). Defendants stated in their response that "State Farm fails to identify why *as renters* the Debtors did not qualify for the policy nor does State Farm identify specifically why, *if they were renters of the home*, they would not be entitled to the collection of benefits in connection with the loss of personal property due to the fire and the living expenses." *Id.* at ECF No. 387, p. 1 (emphasis added).

Under these circumstances, the Court gives no weight to the fact that the bankruptcy court's order made reference to a land contract. If anything, the conclusions reached by the bankruptcy court serve only to reinforce this Court's doubts about Defendant's sincerity, credibility, and motivation in filing an affidavit

11

swearing that he never signed his original bankruptcy petition, or authorized a conversion from Chapter 13 to Chapter 7, and that he was essentially duped into filing, and then continuing to litigate, a bankruptcy for over six years. This argument is particularly questionable in light of the fact that Defendant has filed bankruptcy numerous times and has often demonstrated, as the bankruptcy court observed, "that [he] understood the difference between signing a document, authorizing a document, and not signing a document." *In re: Roscoe Benton III*, ECF No. 463, p. 16.

The motivation behind Defendant's motion to void his bankruptcy case and the supporting affidavit could not be more obvious: he was hoping to reverse his bankruptcy fraud convictions by voiding the underlying bankruptcy proceeding. (*See* Dkt. 46, p. 4.) The bankruptcy court, with good reason, did not find Defendant credible. Defendant is not entitled to a new trial because his bankruptcy attorney allegedly lost, or failed to obtain, Defendant's ink signature on the initial 2009 bankruptcy petition. The record establishes that the Defendant knowingly and intentionally, with the assistance of several counsel of his choice, availed himself of the advantages of bankruptcy litigation for over six years. A jury found beyond a reasonable doubt that part of Defendant's use of that system constituted a fraud.

The Court therefore rejects Defendants' May 1, 2015 affidavit as inherently lacking in credibility. Under these circumstances, this Court's decision to permit the government to supplement the Presentence Reports with information that may

justify applying a 2-point obstruction-of-justice enhancement to Defendants' offense level based on Defendants' conduct after his trial will not be disturbed.

Defendant's motion for reconsideration is **HEREBY DENIED**. Sentencing is scheduled for **THURSDAY, MAY 5, 2016** at **10:30 am** in **Flint, Michigan**. Defendants' objections to their revised PSRs have been received, and will be addressed by the Court at sentencing.

SO ORDERED.

s/Terrence G. Berg  
TERRENCE G. BERG  
UNITED STATES DISTRICT JUDGE

Dated: April 7, 2016

## Certificate of Service

I hereby certify that this Order was electronically submitted on April 7, 2016, using the CM/ECF system, which will send notification to each party.

By: s/A. Chubb  
Case Manager