UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| UNITED STATES OF AMERICA | Case No. 14-cr-20082-TGB-MJH |
|---|---|
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| ROSCOE BENTON III | (COMPASSIONATE RELEASE) |

Upon motion of ☑ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☐ GRANTED

☐ The defendant's previously imposed sentence of imprisonment of _____ is reduced to _____. If this sentence is less than the amount of time the defendant already served, the sentence is reduced to a time served; or

☐ Time served.

If the defendant's sentence is reduced to time served:

☐ This order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified,

a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall immediately notify the court and show cause why the stay should be extended; or

☐ There being a verified residence and an appropriate release plan in place, this order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure the defendant's safe release. The defendant shall be released as soon as appropriate travel arrangements are made and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

☐ The defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where they will be released because it was not included in the motion for sentence reduction.

☐ Under 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of ☐ probation or ☐ supervised release of _____ months (not to exceed the unserved portion of the original term of imprisonment).

☐ The defendant's previously imposed conditions of supervised release apply to the "special term" of supervision; or

☐ The conditions of the "special term" of supervision are as follows:

☐ The defendant's previously imposed conditions of supervised release are unchanged.

☐ The defendant's previously imposed conditions of supervised release are modified as follows:

☐ DEFERRED pending supplemental briefing and/or a hearing. The court DIRECTS the United States Attorney to file a response on or before _____, along with all Bureau of Prisons records (medical, institutional, administrative) relevant to this motion.

☒ DENIED after complete review of the motion on the merits.

☒ FACTORS CONSIDERED (Optional)
 See attached addendum. Additionally, Motion for Default Judgment (ECF No. 140) is DENIED as moot.

☐ DENIED WITHOUT PREJUDICE because the defendant has not exhausted all administrative remedies as required in 18 U.S.C. § 3582(c)(1)(A), nor have 30 days lapsed since receipt of the defendant's request by the warden of the defendant's facility.

　　IT IS SO ORDERED.

:

　　　　　　　　　　　　　　　　　　　s/Terrence G. Berg
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE


Dated:  May 7, 2021

In determining whether Mr. Benton is eligible for compassionate release under 18 U.S.C. § 3582(c), the Court must determine (1) whether he has exhausted his administrative remedies, (2) whether there are "extraordinary and compelling reasons" to warrant his release, and (3) whether his release would be consistent with the factors set forth in § 3553(a). While there is "lingering ambiguity" as to whether Mr. Benton exhausted his administrative remedies, the government does not challenge his motion on this ground.[1] ECF No. 139, PageID.3492. The government also concedes, and the Court agrees, that he has "extraordinary and compelling reasons" warranting release: his obesity, asthma, and hypertension make it more likely he could get severely ill from COVID-19 if he were to contract the disease. *Id.* at PageID.3497; *see also* Centers for Disease Control, People with Certain Medical Conditions (April 16, 2021), https://perma.cc/N8XL-V3RL.

However, most of the factors under § 3553(a) counsel against granting this motion. Regarding the nature and circumstances of the offense, Mr. Benton's crimes are financial in nature, but at a significant scale. He and his codefendant received close to $400,000 in insurance proceeds under false pretenses in connection with a bankruptcy fraud scheme. The goals of imposing a just sentence and encouraging respect for the law, given the scope of the conduct and Mr. Benton's actions over the pendency of his case, were closely considered in determining the original sentence term. These reasons specifically informed the Court's decision not to impose a shorter sentence or even probation as advocated by Mr. Benton at his sentencing hearing, and this is the factor that weighs most heavily in the decision to deny the motion.

As to the goal of deterrence, it is true that Mr. Benton has served roughly 40 months of his 48-month sentence, or 83%, with a projected release date of December 14, 2021. Early release would not therefore result in a large reduction in his sentence, nor would it lead to a sentencing disparity with his codefendant, who served a 24-month sentence. This factor does not weigh heavily against granting release.

---

[1] The Court notes that the government did timely file a supplemental brief as requested in this matter, so Mr. Benton's Motion for Default Judgment (ECF No. 140) is denied as moot.

But as to the goal of protecting the public from further crimes, the Court finds troubling Mr. Benton's lack of remorse and lack of acceptance of responsibility regarding some of his actions. He indicated at sentencing that, regarding the jury's guilty verdict, he "respect[ed] that and . . . accept[ed] responsibility for that." Tr. 5/5/2016, ECF No. 96, PageID.1694. But between the date of his conviction and his sentence, Mr. Benton perpetrated a new scheme on the bankruptcy court, filing a false affidavit seeking to undermine his conviction by asserting that the bankruptcy proceeding in connection with which he found guilty of committing fraud was somehow invalid. *Id.* at PageID.1933-35. Another consideration under this factor is Mr. Benton's failure to report to serve his sentence after being notified of his reporting date. Mr. Benton not only absconded, he attempted to avoid being held accountable by denying his identity when he was arrested on the Court's bench warrant for failure to appear. *See* ECF Nos. 122-24. This factor therefore weighs significantly against granting release.

This Court is also taking into account the severity of COVID-19 incidence at FCI Fort Dix, where Mr. Benton is incarcerated. Examining the publicly available data, FCI Fort Dix experienced large COVID-19 outbreaks in both November 2020 and January 2021. Since the beginning of March, inmate active case numbers have been close to zero, though it is unclear whether inmates are tested regularly. Staff case numbers have been on the rise since January 2020 and there are currently two active staff cases. *See* Pandemic Response Oversight, Dashboards of BOP COVID-19 Cases (May 3, 2021), https://perma.cc/83TS-WCPE. Additionally, the briefing indicates that Mr. Benton contracted COVID-19 in January 2021 and has since recovered. ECF No. 139, PageID.3496.

Though Mr. Benton's risk of contracting COVID-19 at FCI Fort Dix seems less significant now, and that factor informs this Court's decision, "it is the obligation of the Bureau of Prisons to ensure that those inmates who do not qualify for compassionate release are housed in conditions that genuinely reduce the risk of exposure to the virus." *United States v. Brown*, No. 2:18-CR-20293-TGB, 2021 WL 388465, at *3 (E.D. Mich. Feb. 4, 2021). Mr. Benton alleges that many inmates tested positive within his housing block in December. ECF No. 136, PageID.3464. Additionally, FCI

Fort Dix's warden was reassigned to an administrative role in February 2021, and Mr. Benton alleges that this is due to his failure to sufficiently address the health and well-being of the inmate population at Fort Dix. ECF No. 138, PageID.3488.

      Having carefully considered all of the § 3553 factors, the Court concludes that Mr. Benton is not eligible for compassionate release. Nevertheless, the Bureau of Prisons has a responsibility to do more for all individuals within its facilities, including making vaccines immediately available to all inmates. The government highlights that the Bureau of Prisons has begun vaccinating prisoners. According to its website, 247 staff members and 1,481 of 2,786 inmates have received the vaccine at FCI Fort Dix. *See* COVID-19 Vaccine Implementation (May 3, 2021), https://perma.cc/V6RZ-3UQH. Delivery of these vaccines to those in prison, including Mr. Benton, must be a top priority.